J-S68030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: T.B.H. | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| APPEAL OF: B.A.H., FATHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 638 WDA 2016 |

Appeal from the Order dated March 31, 2016
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  No. 108 of 2015

| | |
|---|---|
| IN RE: ADOPTION OF: M.M.H. | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| APPEAL OF: B.A.H., FATHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 639 WDA 2016 |

Appeal from the Order dated March 31, 2016
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  No. 107 of 2015

BEFORE:  SHOGAN, SOLANO, and STRASSBURGER*, JJ.

MEMORANDUM BY SOLANO, J.:          **FILED NOVEMBER 08, 2016**

B.A.H. ("Father") appeals from the March 31, 2016, orders granting the petitions filed by A.E. ("Mother") for the involuntary termination of his parental rights to his sons, M.M.H., born in August of 2004, and T.B.H., born

_____

\* Retired Senior Judge assigned to the Superior Court.

in June of 2005 (collectively, "the Children"). Upon careful review, we affirm.

On November 18, 2015, Mother filed the subject petitions pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1)-(2) and (b) ("Grounds for involuntary termination"). The orphans' court held an evidentiary hearing on March 31, 2016, during which Mother, her husband M.E. ("Stepfather"), and Father testified, as will be detailed below.

The orphans' court made factual findings and conclusions of law on the record in open court, which the testimonial evidence supports. **See** N.T., 3/31/16, at 47-51. Specifically, the court found that Father last saw the Children ten years ago and has made no concerted effort to see or contact them since. **Id.** at 47. The court found that Father has been incarcerated for a substantial amount of time since February 24, 2005. N.T., 3/31/16, at 48. Finally, Father was most recently incarcerated for criminal charges brought against him sometime in 2015, of which he was found guilty on July 31, 2015. **Id.** at 31.

By separate orders dated March 31, 2016, and entered on April 1, 2016, the orphans' court terminated Father's parental rights to the Children pursuant to Section 2511(a)(1)-(2) and (b). Father filed timely appeals from each order, which this Court consolidated *sua sponte*.

On appeal, Father presents one issue for our review:

> Whether the [orphans'] court erred in finding by clear and convincing evidence that the moving party met its burden under 23 Pa.C.S. § 2511(b) that the best interests of the [C]hildren are met by terminating Father's parental rights?

Father's Brief, at 4.

We consider Father's issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the

3

standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is on the petitioner seeking termination to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are met. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Section 2511 of the Adoption Act provides:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing,

4

furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1)-(2), (b).

As Father does not raise an issue in his brief with respect to Section 2511(a)(1) or (2), we review the subject orders with respect to Section 2511(b) only. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived under Pa.R.A.P. 2116(a)).[1]

With respect to Section 2511(b), this Court has explained that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The trial court must "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id.** (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on

---

[1] The Guardian *Ad Litem*'s brief in this appeal asserts that the evidence of record supports the involuntary termination of Father's parental rights pursuant to Section 2511(b).

the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

On appeal, Father argues that the evidence does not support termination under Section 2511(b) because "a bonding assessment was not performed nor was there any admissible testimony offered establishing whether the termination of [his] parental rights would have a negative impact on the [C]hildren." Father's Brief, at 8. In addition, Father argues there was no testimony "regarding the bond or lack thereof" between the Children and him. ***Id.*** We are unpersuaded by Father's arguments.

"In analyzing the parent-child bond, the orphans' court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert." ***In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008) (citation omitted). Here, the record shows no evidence of a parent-child bond between the Children and Father that calls for any further analysis.

The testimonial evidence demonstrates that Father became incarcerated in February of 2005, when M.M.H. was approximately 1½ years old, and Mother was pregnant with T.B.H. Father had a parental visit with the Children in the Westmoreland County jail on an unspecified date in 2006, at which time M.M.H. was approximately two years old, and T.B.H. was one year old. The Children have never seen or heard from Father again since that time. Mother testified that Father has had no contact with the Children, either by telephone or otherwise, since the 2006 visit, N.T., 3/31/16, at 5-6,

9, and Father does not contradict that assertion; he too testified that he last saw the Children in 2006 at the Westmoreland County correctional facility. *Id.* at 18. Father testified that he did not know where the Children resided during the years he was not in prison, that is, from 2012 until 2015. *Id.* at 27-28. He was reincarcerated in Westmoreland County about fifteen months before the hearing, and he testified that he has had no contact with the Children since that time because he does not know "where they are at." *Id.* at 17-18.[2]

The orphans' court found that Father made only minimal efforts to try to find or contact his Children. These included limited attempts to try to utilize social media, a phone call, a one-time request at a domestic relations proceeding, and one occasion in 2013 when he happened to pass by Mother while they were entering and exiting a store. The court found Father's meager efforts to be evidence of a "failure to pursue due diligence in perfecting his parental role" and, therefore, "a settled purpose of relinquishing a parental claim to both of the children." N.T., 3/31/16, at 47.

---

[2] Father testified that his most recent incarceration is due to his conviction for violating a registration requirement under Megan's Law. N.T., 3/31/16, at 28. Father acknowledged on inquiry by the court that he was required to register under Megan's Law after pleading guilty in 2005 to, among other things, involuntary indecent sexual intercourse and aggravated indecent assault. *Id.* at 29-30. Father is currently serving a sentence of "9 to 18 years with a concurrent sentence of 5 to 10 years," and the orphans' court found that, "at a minimum, he'll be incarcerated at least through July of 2025. . . ." *Id.* at 49.

The testimonial evidence also shows that Father has never provided any financial assistance for the Children, attempted to file a visitation or other custody action, or sent the Children any Christmas gifts or other correspondence. N.T., 3/31/16, at 6, 18-19, 36-37.

Stepfather testified that he and Mother married on December 2, 2011, after dating for approximately five months. N.T. 3/31/16, at 13.[3] He has been involved with the Children since July of 2011, for a total of nearly five years. *Id.* at 13-14. Stepfather testified:

> Q. And have [the Children] acted or accepted you as a father figure?
>
> A. Yes. About six or eight months in, they started to call me dad. . . .

*Id.* at 14. Stepfather testified that he desires to adopt the Children if Father's parental rights are terminated. *Id.* at 11-12, 14.

Based on the foregoing, there is no testimonial evidence of a parent-child bond between the Children and Father. Therefore, contrary to Father's argument on appeal, it was reasonable for the orphans' court to infer without a formal assessment that no bond exists. *See K.Z.S.*, 946 A.2d at 762-763. The record evidence demonstrates that a parent-child bond instead exists between the Children and Stepfather. As such, we discern no abuse of discretion by the orphans' court in concluding that the involuntary

---

[3] There is an inconsistency in the record regarding the date of the marriage. Mother testified that she and Stepfather married in December of 2012. N.T., 3/31/16, at 4.

termination of Father's parental rights will serve the developmental, physical, and emotional needs and welfare of the Children pursuant to Section 2511(b). Accordingly, we affirm the orphans' court's orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2016